STATE of Iowa, Appellee,

v.

Lloyd Henry BLACKWELL, Appellant.

No. 57447.

Supreme Court of Iowa.

Jan. 21, 1976.

John C. Wellman, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., Ray A. Fenton, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS and McCORMICK, JJ.

MASON, Justice.

January 14, 1974, a county attorney's information was filed in the Polk district court charging Lloyd Henry Blackwell with the crime of assault with intent to commit

murder as defined in section 690.6, The Code. The assault was perpetrated by Blackwell's shooting and injuring Rolland Lee Corley. He appeals from judgment based on a jury verdict convicting him of the crime charged. The facts of the assault, however, are not relevant to the issues raised in this appeal.

The incident giving rise to this appeal occurred in a hallway on the fourth floor of the Polk County Courthouse during the noon recess of the second day of trial after the State had rested. Prior to this, some 15 to 18 spectators had been present during defendant's trial in the small courtroom on that floor. These people were apparently friends and relatives of defendant and at times talked with Blackwell. The trial judge noted courtroom decorum had not been breached, although once he had to request the spectators to remove their hats, and at another point restricted their comings and goings. Both requests saw compliance.

The sheriff's office had decided for reasons of security to restrict people from conversing with defendant at the courthouse. When Deputy Chris Spidle returned defendant for the afternoon session, an altercation took place in the hallway. As the deputy and defendant passed by the courtroom spectators who were waiting in the hall, the deputy announced there would be no more "talking or hugging"—that this type of thing was for visitor's day. The people protested but Spidle and defendant proceeded to the courtroom.

Defendant then announced he wished to smoke a cigarette so the two proceeded back to the hall. At this point some spectators asked why talking was restricted. Spidle noted the people were upset. One male approached defendant and the two began conversing, whereupon Spidle threatened to take defendant back to jail. The others then converged and there was general pushing and shoving. Someone hit a bailiff who had come to the officer's aid. Spidle then "forcibly" handcuffed defendant and the "melee" commenced in earnest. Mace was used on one "very belligerent" woman. According to the testimony of another deputy, "Blackwell and everyone was swinging. It was just a mess."

Defense attorney Harlan Lemon stated at least two jurors were standing outside the courtroom. Lemon "assumed" they were trying to get away from what was occurring and stated, " * * * there is no doubt in my mind but what—at least part of what happened, whatever happened, happened in the presence of some of the jury and, of course, I think the remainder of the jury was probably just inside the door, and the door was opened and closed several times."

The foregoing facts were elicited in the courtroom by the trial court, out of the presence of the jury *and defendant.* The court reasoned defendant's presence "might lead to additional disruptions." The county attorney and defense counsel were present, neither of whom lodged objections to defendant's absence.

The trial court then summoned the jury in the presence of defense counsel and the county attorney. Defendant again was absent for the previous reasons. The purpose of this second stage was to determine whether the jury, "individually or collectively," had been affected by these events in their abilities to be fair and impartial.

The judge explained the noon hour events were in no way ordinary happenings during the course of a trial. The jury was further told people will seldom admit prejudice but that there were certain "indirect" methods by which to ascertain prejudice. (This aspect seemingly referred to racial prejudice). The reason he was saying these things, the judge said, was to impress upon the jury he wanted honest answers, not what the jury persons thought the judge wanted. The importance of the inquiry was stressed.

The jury was then informed that anyone who wished to speak up should do so. And in this regard, ten jurors stated the noon hour events had not affected their ability to

be fair and impartial to both sides of the case. Mrs. Terry Hoskinson stated, "I must admit I *was* quite frightened when I walked up the hallway, but that has nothing to do, as far as I am concerned, with the case in itself. I don't know at all what went on out there except that there was a lot of yelling and screaming, so it affects it no way." The record discloses the other nine jurors made similar responses.

After both attorneys stated they did not wish to confer with the jury, the trial judge again asked if anyone had seen or heard anything affecting his ability to be fair and impartial. "Can I assume then that you are all of a mind that you can be fair and impartial?" A juror answered, "Yes."

The court and counsel then retired to chambers where the court inquired if either counsel were going to move for a mistrial. The State declined to do so. However, defense counsel moved for a mistrial contending "that it is impossible for those jurors to see any part of, or hear any part of the melee that took place out there without it affecting them somehow, so I am regretfully moving for a mistrial." Counsel then stated, "I suspect that it would be appropriate for me to consult with my client."

The motion was overruled. In this regard, the trial court apparently had earlier granted such a motion, as it was stated, "the Court reverses itself and denies the motion for mistrial."

The court then instituted certain precautions to insure the events of that day would not be repeated. The number of spectators was limited to the number of chairs in the courtroom, and the comings and goings were to occur only at recesses. It was also provided defendant and counsel were to enter the courtroom after everyone else was present and seated. The spectators were then to remain after adjournment until defendant and counsel had left the courtroom and defendant was placed in a side room.

Trial was continued until the following morning when the court, out of the jury's presence, explained to defendant the proceedings of the day before. The following colloquy took place between the trial judge and defendant:

"Now, my purpose in advising you of this fact is that these events took place out of your presence, and I want to know first of all, do you have any questions of me? Do you understand what took place, and secondly, do you have any objection that you now want to register yourself, or through your attorney, to those proceedings taking place out of your presence?

"First of all, do you have any questions of me relative to the procedures that followed or that took place when you were not present? Do you understand those now?

"THE DEFENDANT: Yes, I believe now, yes.

"THE COURT: Now, do you have any objection that you want to raise personally or through your attorney to those things taking place out of your presence? Do you understand, first of all, why I felt, under the circumstances, it was best that you not be brought back to the courtroom facility at that time?

"THE DEFENDANT: No, not really.

"THE COURT: You don't understand it. Well, regardless of that, do you have any objection to raise to those things taking place out of your presence, with the understanding that your lawyer was present and did make, in my opinion, adequate record protecting you?

"THE DEFENDANT: Yes.

"THE COURT: Do you have any objections?

"THE DEFENDANT: No.

"THE COURT: Mr. Lemon, any objection you wish to make for your client?

"MR. LEMON: No, not in that regard, Your Honor."

When the court concluded the record as to the incident, it afforded defense opportunity to make further record. At this point

defense moved for directed verdict which was overruled.

Defendant did not take the witness stand but offered testimony of two witnesses in defense to the charge.

The State offered no rebuttal and defendant renewed his motion for directed verdict, motion for mistrial and motion to withdraw from consideration of the jury the crime of assault with intent to commit murder. The court overruled each motion. Copies of the proposed instructions were submitted to counsel with opportunity to make objections and take exceptions. After arguments of counsel the matter was then submitted to the jury which returned its verdict as indicated.

In instruction 19, the jury was admonished as follows:

" * * * In your jury room you should not refer to, discuss or consider any testimony that has been stricken out or anything in connection with this case except the evidence received upon the trial and the instructions of the Court. All extraneous matters, statements and suggestions should be carefully discarded by you, and, as heretofore instructed, you should base your verdict solely upon the evidence and be guided by these instructions and seek to arrive at the very truth of the matter without sympathy, bias, passion or prejudice."

April 3, 1974, the jury returned a verdict of guilty. Defendant's motion for a new trial incorporated the mistrial grounds. Attached to this motion was the affidavit of Deputy Clerk of Court Josephine Harper which stated she came in contact with at least three jurors on the third floor of the courthouse. They expressed " * * * a fear for their personal safety and sought directions as to alternate ways of reaching the courtroom * * *."

The motion for a new trial was denied. Defendant was sentenced to a term of 30 years to be served at the Men's Reformatory in Anamosa. Defendant urges this court to "reverse his conviction, and *dismiss the*

*County Attorney's Information* against him."

The appeal presents two issues for review: (1) whether the court erred by excluding defendant from examination of the jurors concerning the noon recess disturbance and (2) whether defendant was deprived of a trial in a calm atmosphere by an impartial jury by reason of the court's denial of defendant's motion for mistrial.

I. Defendant bases his first contention—the trial court committed prejudicial error by its examination of the jurors out of his presence concerning the noon recess disturbance—on rights guaranteed by the Confrontation Clause of Amendment 6 to the United States Constitution.

In this connection this statement from *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, states defendant's position as we understand it:

"The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that: 'In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' We have held that the Fourteenth Amendment makes the guarantees of this clause obligatory upon the States. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial. *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)."

This principle is embodied in Fed.R. Crim.P. 43 and 3 Wright, Federal Practice and Procedure: Criminal, section 721.

In *Jackson v. Hutto,* 508 F.2d 890, 891–892 (8 Cir. 1975), the court stated: " * * [I]t is settled law that communications between judge and jury in the absence of the defendant and his counsel are improper. * * * [citing authorities]. The rationale of these cases is that a defendant has a right to be present at every stage of his trial. * * * [citing authorities].

"Because a defendant's right to be present is, in the federal context, guaranteed by Fed.R.Crim.P. 43, the federal courts have, typically, not been called upon to determine the precise constitutional dimensions of this right. * * * [citing authority]. Nevertheless, there appears little doubt that a defendant's right to be present is constitutionally grounded in either the right to confrontation of the sixth amendment or the right to due process of the fifth and fourteenth amendments. * * * [citing authority]."

■ However, as explained in *Allen*, 397 U.S. at 342–347, 90 S.Ct. at 1060–1062, 25 L.Ed.2d at 358–361, this right of an accused guaranteed by Amendments 6 and 14 to be present throughout his trial may be lost by consent or at times even by misconduct. In this regard we point out Blackwell was in custody and no contention is offered that he acted in an unruly manner at the time of the incident.

As defendant concedes in written brief and argument there are certain steps or phases in a criminal trial in which the defendant's absence does not violate his constitutional rights. See *United States v. Gregorio*, 497 F.2d 1253, 1257–1260 (4 Cir. 1974); *Yates v. United States*, 418 F.2d 1228, 1229 (6 Cir. 1969); *United States v. Williams*, 455 F.2d 361, 365 (9 Cir. 1972); *Deschenes v. United States*, 224 F.2d 688, 693 (10 Cir. 1955); and authorities cited in these opinions.

Defendant cites and relies on section 777.-19, The Code, and the cases construing this statute as support for his contention. This statute provides:

"Personal presence at trial. If a felony is charged, the defendant must be personally present at the trial, but the trial of a misdemeanor may be had in his absence, if he appears by counsel."

This court recently dealt with this statute in *State v. Snyder*, 223 N.W.2d 217 (Iowa 1974), a case in which defendant was not present when an additional instruction was given to the jury. Defendant's absence was held to be reversible error. The court stated:

"We must hold § 777.19, The Code, 1973, necessarily assumes prejudice to the defendant. * * * That defendant himself be at least afforded the opportunity to be present at all stages of his trial is an elemental corollary of the constitutional rights of due process and confrontation, * *." 223 N.W.2d at 222.

This court has announced the view that the right of a defendant in a prosecution for a felony to be present when a trial court gives additional instructions to the jury gives rise to a presumption of prejudice necessitating reversal unless the record affirmatively shows the instruction had no influence on the jury's verdict prejudicial to the defendant. *State v. Snyder*, 223 N.W.2d at 221–222 and authorities cited.

We have also recognized that not every communication between judge and jury after the jury's retirement to deliberate on a verdict is an instruction. *State v. Fiedler*, 260 Iowa 1198, 1206, 152 N.W.2d 236, 242. See also *State v. Baumann*, 236 N.W.2d 361 (Iowa, filed December 17, 1975).

In *Bustamante v. Eyman*, 456 F.2d 269, 271–272 (9 Cir. 1972), defendant was convicted of murder in the first degree by a jury and sentenced to life imprisonment. When the jury was instructed by the court the defendant was present and the instructions were tape recorded. When the case was submitted to the jury defendant was taken from the courthouse to the county jail. After seven hours of deliberation the jury returned to the courtroom and requested a rereading of the instructions. Defendant was not brought back from jail, although defense counsel was present and waived the presence of the defendant.

The instructions having been played back, the jury retired to deliberate further. Approximately one hour later defendant was taken from jail into the courtroom where the jury pronounced its verdict of guilty. In the course of its opinion the court dealt

with the right of a defendant in a prosecution for a felony to be personally present at all the proceedings in the courtroom, pointing out that:

"The right of a defendant charged with a felony to be personally present in the courtroom at every stage of his trial conducted there is fundamental to our system of justice. This right was recognized by the Supreme Court many years ago: 'A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner.' *Lewis v. United States*, 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892). This principle has been consistently upheld and continually reaffirmed. * * * [citing authorities]. The rule includes the defendant's right to be present whenever the court communicates with the jury. *Shields v. United States*, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927)."

The obvious purpose of the trial judge's examination of the sheriff's deputies and bailiffs and his communications with the jurors was to determine whether those events occurring during the noon recess disturbance had affected the jurors' ability to be fair and impartial—a fundamental aspect of a fair trial. *State v. Cowman*, 212 N.W.2d 420, 425 (Iowa 1973). In our opinion this examination is equally as critical and important in relation to a defendant's presence in a prosecution for a felony as is the submission of an additional instruction considered in *State v. Snyder*, supra.

In our opinion, it follows defendant had a constitutional as well as statutory right to be personally present in the courtroom when the court examined the deputies, bailiffs and jurors.

II. Having reached the foregoing conclusion it must be determined whether under the record the presumption of prejudice arising from defendant's absence necessitates a reversal.

In the case before us the trial court caused a complete record to be made of everything that transpired during the course of its examination of the sheriff's deputies and bailiffs and the communications between the court and jurors as to what occurred during the noon recess disturbance.

The State in response to defendant's first assignment concedes that in a prosecution for a felony a defendant has the right to be present in his own person "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." The State does not contest the point that a question arising during trial of a felony as to the ability of a juror or jurors to continue to serve constitutes a critical stage in the trial process.

However, the State maintains in written brief and argument that even though an argument could be made the absence of Blackwell in the present case gives rise to a presumption of prejudice, such presumption is rebuttable if the record completely negatives any reasonable possibility of prejudice arising from such error.

■ The rule requiring a defendant in a prosecution for a felony to be present at all stages of the trial must be considered together with the rule of harmless error. *United States v. Reynolds*, 489 F.2d 4, 8 (6 Cir. 1973).

*Jackson v. Hutto*, 508 F.2d at 892 tells us, "[t]he courts are almost uniform in holding that such communications [communications between the judge and jury in the defendant's absence], although presumptively prejudicial, may be shown to constitute harmless error. * * * [citing authorities]. There is only limited authority for the proposition that the presumption may not be rebutted. * * * [citing authorities]."

This court has recognized the harmless constitutional error rule. *State v. Lanphear*, 220 N.W.2d 618, 622 (Iowa 1974), has this statement:

"In *Chapman* [*v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705] petitioners urged the Court to hold that all

federal constitutional errors regardless of facts and circumstances must always be deemed harmful. The majority declined to adopt such a rule and concluded 'there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.' 386 U.S. at 21–22, 87 S.Ct. at 827, 17 L.Ed.2d at 709.

" * * * [B]efore a constitutional error can be held harmless the court must be able to declare a belief it was harmless beyond a reasonable doubt."

In *Bustamante v. Eyman*, 456 F.2d at 274, it is said:

" * * * If the error was harmless, there is no reason to disturb the conviction. If, however, appellant's absence prejudiced his case, weakened his defense, or was otherwise harmful to his interests, a new trial must be held." Connected with the foregoing factors would seem to be one of extreme importance—whether defendant's absence in some manner influenced the verdict.

In making this determination it perhaps would be of benefit to consider the reasons for an accused's right to be present. In *State v. Snyder*, 223 N.W.2d at 221, this court quoted with approval the following language from *Meece v. Commonwealth*, 78 Ky. 586 (1880):

"The presence of the accused may be, and certainly is, essential to the ends of justice in the trial of all criminal offenses when his life or liberty is involved. When instructions are given by the court, or when the jury, returning from their room, desire to be further instructed, the presence of the accused is of the greatest importance, as he may be able to suggest to the court or his counsel some information that would throw additional light on his defense. He should also be present that he may except to the ruling of the court."

While not completely analogous, the additional instruction situation and the one presently under consideration both involve the trial court's communication with the jury. It would seem a defendant's presence at one would be as vital and helpful as his presence at the other. Yet, it is difficult to comprehend, under these specific facts, how defendant's presence at the jury examination could have been helpful to his defense. The trial court was, but for the fact of the accused's exclusion, careful to protect the right to a fair trial.

■ Stated differently, while it must be acknowledged an examination of the jury to ascertain its impartiality is extremely important in relation to defendant's right to a fair trial and that defendant's absence therefore constituted error, we conclude beyond a reasonable doubt the communications under consideration here did not create any reasonable possibility of prejudice. This is the standard by which to determine whether reversible error occurred by reason of the forbidden communication between the court and jury. *United States v. Reynolds*, 489 F.2d at 8.

We have elected to rest our determination on the principle the presumption of prejudice arising from defendant's absence has been rebutted under the record before us rather than on a consideration of other brief points urged by the State.

III. Defendant also contends on appeal the trial court abused its discretion in overruling the motion for a mistrial. It is argued the noon recess disruptions denied defendant the right to a fair trial in a calm atmosphere. Defendant's argument infers and deduces prejudice from the following factors:

1. The size of the incident.

2. "[T]he jury's knowledge not only of the incident but also that the Defendant's friends and sympathizers were involved,

3. "[T]he subsequent unexplained absence of the Defendant from the voir dire proceedings."

Defendant argues the jurors were probably frightened by the incident, which fright would have developed into hostility. "A frightened juror simply is not an impartial juror." Furthermore, in examining the jury to determine its impartiality, the trial judge did not get responses from two jurors. Finally, defendant compares his absence and the inferences the jury could have drawn from it to situations in which a defendant is unreasonably handcuffed in the courtroom. It is apparent the analogy drawn by defendant is weak. In any event, the District of Columbia circuit court has pertinently stated:

"As for argument that the jury may have 'speculated adversely to the [appellant] about his absence from the courtroom,' we need only say that, standing alone, it does not establish the necessary 'reasonable possibility of prejudice.' * * * [citing authorities]." *United States v. Jones*, 517 F.2d 176, 182 (D.C.Cir.1975). Cf. *Wade v. United States*, 142 U.S.App.D.C. 356, 441 F.2d 1046, 1050 (1971).

It should be noted at the outset "a defendant in a criminal prosecution is entitled to an impartial jury. Iowa Const. Art. I, § 10; U.S.Const. Amend. VI. This clause in the Sixth Amendment to the United States Constitution applies to the states through the Fourteenth Amendment. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776." *State v. Knutson*, 220 N.W.2d 575, 577 (Iowa 1974).

If an incident during trial would cause a jury to become impartial, the logical route would be for the defendant to move for the declaration of a mistrial.

"Trial courts have considerable discretion in granting or denying motions for mistrial. *State v. Houston*, 209 N.W.2d 42, 44 (Iowa 1973). Such latitude of discretion would seem appropriate in view of a trial court's ability to gauge the impact of the subject of the motion upon the trial. The controlling question is whether prejudice is shown. *State v. Carey*, 165 N.W.2d 27, 29 (Iowa

1969)." *State v. Dalgliesh*, 223 N.W.2d 627, 628 (Iowa 1974).

"'* * * A trial judge is always in the best position to determine whether such an incident as occurred in this case, which it was impossible to anticipate or guard against * * * calls for a mistrial. Only a clear and obvious abuse of a trial court's discretion in refusing a mistrial will justify a reversal of a case by an appellate court upon a cold record. As was said in *Goldstein v. United States*, 8 Cir., 63 F.2d 609, 613, "It is impossible to gather from the cold record * * * the atmosphere of the trial itself, the manner in which the words were spoken, or the probable effect, if any, which they had upon the merits of the controversy."'" *State v. Staker*, 220 N.W.2d 613, 617 (Iowa 1974).

■ The foregoing rules concerning a trial court's discretion and thus, the extent of this court's review, are applicable in the situation of spectator misconduct. See *State v. Curtis*, 192 N.W.2d 758, 761 (Iowa 1971); *State v. Hackett*, 197 N.W.2d 569, 572 (Iowa 1972).

■ The result of these rules would require this court, in order to reverse, to determine the trial judge abused his wide discretion in denying the motion for a mistrial. Stated otherwise, this court would have to find the trial judge's ruling denying mistrial was "'* * * so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *State v. Warner*, 229 N.W.2d 776, 783 (Iowa 1975).

"* * * Abuse of discretion is shown only when the one objecting to the ruling has displayed that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. * * * [citing authority]." *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974).

A review of the record, considered in the light of the above rules, dictates the conclusion the exercise of the trial court's discretion was not abused. After the initial examination in which ten of the jurors responded, the trial judge again asked the jury as a whole whether they remained impartial, to which one answered in the affirmative. In addition, curative steps were taken to insure such disturbances would not recur. Instruction 19 ordered the jury to consider only the evidence received at trial—not any extraneous matters. Finally, the evidence as to certain jurors being frightened indicates any such fright existed during the altercation when the jurors were returning to the courtroom. Nothing demonstrates any continued fear on the part of the jurors for their safety.

All things considered, the trial court did not abuse its discretion by concluding the jury could remain fair and impartial to both sides of the case. This conclusion is supported by *State v. Dais*, 22 N.C.App. 379, 206 S.E.2d 759 (1974), appeal dismissed 285 N.C. 664, 207 S.E.2d 758 (1974), a case referred to this court by the State.

In *Dais*, an assault with intent to commit rape case, some of the jurors saw prosecutrix' father assault defendant after she had broken down on the stand. Furthermore, some jurors observed prosecutrix being taken away in an ambulance after her testimony. The appellate court noted the trial judge's wide discretion in this type of situation. In addition to ordering the jury it should not consider the incidents in reaching its verdict, one juror was dismissed. It was held the trial court had not abused its discretion.

The trial court did not err in overruling Blackwell's motion for mistrial.

We have considered every contention urged by defendant in seeking reversal and have found none with merit.

The case is therefore

Affirmed.