Lloyd H. BLACKWELL, Appellant,

v.

Lou V. BREWER, Warden, Appellee.

No. 77–1396.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 2, 1977.

Decided Oct. 5, 1977.

John C. Wellman, Des Moines, Iowa, argued and on brief for appellant.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa (argued), Richard C. Turner, Atty. Gen. and Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, on brief for appellee.

Before BRIGHT, ROSS, and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

In this habeas corpus petition brought under 28 U.S.C. § 2254, appellant Lloyd Henry Blackwell contends that an Iowa state trial court, in convicting him for the crime of assault with intent to commit murder, violated his right as a defendant in a criminal trial to be present during all trial court proceedings as guaranteed by the fifth, sixth, and fourteenth amendments to the United States Constitution. The state trial judge excluded Blackwell from the courtroom during the time the trial judge questioned deputy sheriffs, bailiffs, and members of the jury to determine whether an altercation in the courtroom hallway in the presence of some jury members may have prejudiced Blackwell's right to a fair

trial. Blackwell presented the same issue to the Iowa Supreme Court on his direct appeal from his conviction and thirty-year sentence. The Iowa Supreme Court denied him relief in its opinion, reported as *State v. Blackwell*, 238 N.W.2d 131 (Ia.1976). The federal district court,[1] adopting in substance the reasoning of the Iowa Supreme Court, denied Blackwell's habeas corpus petition, and he brings this timely appeal. For reasons stated below, we reverse and remand this case to the federal district court for further proceedings.

The Iowa Supreme Court opinion relates in detail the pertinent facts. The parties stipulated the accuracy of that representation. We shall recite those bare essentials necessary to an understanding of our ruling.

An altercation occurred in the hallway on the fourth floor of the Polk County Courthouse in Des Moines during the noon recess of the second day of trial of the State's case against Blackwell. The State at that time had rested. The Polk County sheriff's office decided for reasons of security to bar Blackwell's friends and relatives who were attending the trial from conversing or visiting with Blackwell when the sheriff's personnel brought Blackwell from the jail to the courtroom. A controversy between Blackwell's supporters and sheriff's personnel occurred, precipitating the following incident described by the Iowa Supreme Court:

> [Deputy Sheriff] Spidle noted the people were upset. One male approached defendant and the two began conversing, whereupon Spidle threatened to take defendant back to jail. The others then converged and there was general pushing and shoving. Someone hit a bailiff who had come to the officer's aid. Spidle then "forcibly" handcuffed defendant and the "melee" commenced in earnest. Mace was used on one "very belligerent" woman. According to the testimony of anoth-

---

1. The decision of the Honorable W. C. Stuart, United States District Judge for the Southern District of Iowa, is unreported.

er deputy, "Blackwell and everyone was swinging. It was just a mess." [*State v. Blackwell, supra,* 238 N.W.2d at 132.]

At least two jurors saw the incident, while others heard at least part of the commotion. To determine what had transpired, the trial judge conducted an in chambers investigation out of the presence of the jury and defendant. The trial judge reasoned that the defendant's presence "might lead to additional disruptions." Although present at this investigation, neither the county attorney nor defense counsel lodged objections to the defendant's absence. The trial judge then summoned the jurors and questioned them to determine whether the event in the hallway had affected them, "individually or collectively," in their ability to be fair and impartial. Both defense counsel and the county attorney were present, but the defendant again was absent.

The court explained the noon hour events as extraordinary and afforded the jurors an opportunity to speak. A number of the jurors indicated that the incident had frightened them, but ten members assured the trial judge they could remain fair and impartial. Although two members of the jury made no affirmative response, the court interpreted their silence as acquiescence with the conclusions expressed by other jurors.

Following this colloquy between court and jurors, defense counsel moved for a mistrial on the ground that the melee might have affected the impartiality of the jury. The trial court overruled the motion and recessed the trial for the day. The following morning, outside the presence of the jury, the trial judge advised the defendant of the proceedings during the preceding day:

"Now, my purpose in advising you of this fact is that these events took place out of your presence, and I want to know first of all, do you have any questions of me? Do you understand what took place, and secondly, do you have any objection that you now want to register yourself, or through your attorney, to those pro-

ceedings taking place out of your presence?

"First of all, do you have any questions of me relative to the procedures that followed or that took place when you were not present? Do you understand those now?

"THE DEFENDANT: Yes, I believe now, yes.

"THE COURT: Now, do you have any objection that you want to raise personally or through your attorney to those things taking place out of your presence? Do you understand, first of all, why I felt, under the circumstances, it was best that you not be brought back to the courtroom facility at that time?

"THE DEFENDANT: No, not really.

"THE COURT: You don't understand it. Well, regardless of that, do you have any objection to raise to those things taking place out of your presence, with the understanding that your lawyer was present and did make, in my opinion, adequate record protecting you?

"THE DEFENDANT: Yes.

"THE COURT: Do you have any objections?

"THE DEFENDANT: No.

"THE COURT: Mr. Lemon, any objection you wish to make for your client?

"MR. LEMON [counsel for Blackwell]: No, not in that regard, Your Honor." [*Id.* at 133.]

Thereafter the trial proceeded. The court overruled a defense motion for directed verdict. The defense offered testimony of two witnesses, but not of the defendant.

In instructing the jury, the court admonished that

" * * * [i]n your jury room you should not refer to, discuss or consider any testimony that has been stricken out or anything in connection with this case except the evidence received upon the trial and the instructions of the Court. All extraneous matters, statements and suggestions should be carefully discarded by you, and, as heretofore instructed, you should base your verdict solely upon the

evidence and be guided by these instructions and seek to arrive at the very truth of the matter without sympathy, bias, passion or prejudice." [*Id.* at 134.]

On direct appeal to the Iowa Supreme Court, Blackwell made arguments similar to those presented in federal court on his habeas petition—that his exclusion from the voir dire examination of the jury deprived him of the constitutional right, guaranteed by the sixth amendment to the Constitution, to confront the witnesses against him.[2] Both the Iowa Supreme Court, in affirming the conviction, and the federal district court, in denying Blackwell any habeas relief, rejected this argument.

The crucial question on this appeal of the federal district court's ruling is whether the Iowa trial court deprived Blackwell of his constitutional rights under the fifth, sixth, and fourteenth amendments by excluding him from the courtroom during the voir dire examination of the jury.

█ The Confrontation Clause of the sixth amendment guarantees a criminal defendant the right to be present in the courtroom at every stage of the trial. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892); *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884); *Jackson v. Hutto*, 508 F.2d 890 (8th Cir. 1975); *Bustamante v. Eyman*, 456 F.2d 269 (9th Cir. 1972).

Both the Iowa Supreme Court and the federal district court concluded that Blackwell possessed a constitutional right to be present in the courtroom when the court examined the deputies, bailiffs, and jurors. They further concluded that Blackwell's absence from the proceedings created a presumption of prejudice, which is rebuttable if the record completely negatives any reasonable possibility of prejudice arising from such error. The Iowa Supreme Court found that the trial court's violation of Blackwell's right to be present constituted harmless error beyond a reasonable doubt. 238

N.W.2d at 136–37. As we have noted, the federal district court adopted that finding as its own.

In reasoning that the error in this case constituted harmless error, the Iowa Supreme Court analogized the circumstances at the Blackwell trial to a situation where, in a criminal trial, the presiding judge gives a supplementary instruction to the jury outside the presence of the defendant after the jury has already retired for deliberations. The Iowa Supreme Court, in observing that a defendant's absence in that setting would not necessarily void a conviction because the error may be harmless, commented as follows:

> While not completely analogous, the additional instruction situation and the one presently under consideration both involve the trial court's communication with the jury. It would seem a defendant's presence at one would be as vital and helpful as his presence at the other. Yet, it is difficult to comprehend, under these specific facts, how defendant's presence at the jury examination could have been helpful to his defense. The trial court was, but for the fact of the accused's exclusion, careful to protect the right to a fair trial.
>
> Stated differently, while it must be acknowledged an examination of the jury to ascertain its impartiality is extremely important in relation to defendant's right to a fair trial and that defendant's absence therefore constituted error, we conclude beyond a reasonable doubt the communications under consideration here did not create any reasonable possibility of prejudice. This is the standard by which to determine whether reversible error occurred by reason of the forbidden communication between the court and jury. *United States v. Reynolds*, 489 F.2d, [4] at 8.

We have elected to rest our determination on the principle the presumption of prejudice arising from defendant's ab-

**2.** Additionally, on the direct appeal to the Iowa Supreme Court, Blackwell contended that the state trial court, by denying his motion for a

mistrial, denied him the right to a fair trial in a calm atmosphere.

sence has been rebutted under the record before us. \* \* \* [*State v. Blackwell, supra,* 238 N.W.2d at 137.]

*See Jackson v. Hutto, supra,* 508 F.2d at 892, and cases cited therein.

The federal district court, adopting this analysis, stated:

There is no reason to believe that the defendant, by being present at the jury examination, could have made any suggestions to the Court or his own counsel which would have been helpful to his defense.

■ The burden of proving harmless error is a heavy one and the state must so prove beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We cannot agree with the district court's conclusion that the record in this case establishes that the constitutional error committed against Blackwell was, beyond a reasonable doubt, harmless.

The federal district court found that

[w]hile the event initially occurred in petitioner's immediate area, there has been no indication that petitioner initiated the disturbance or was in any way guilty of any wrongdoing in connection with the incident.

Blackwell's exclusion from the courtroom may very well have led some of the jurors to suspect that Blackwell himself bore some responsibility for the altercation. The trial judge made no attempt to disabuse the jurors of such a possible inference. The record demonstrates that the judge, rather than informing the jury of Blackwell's lack of wrongdoing, merely stated:

The defendant is not present, and the Court has indicated previously in the record why, at the Court's direction, the defendant being not present for this particular record.

Furthermore, Blackwell's exclusion from the courtroom at that time prevented him from consulting with his attorney, particularly with respect to whether any of the jurors had obtained an impression that Blackwell himself had precipitated the altercation.

For these reasons, we conclude that the State has not proved beyond a reasonable doubt that Blackwell's absence from the courtroom during the interrogation of the jury amounted to harmless error.[3]

■ But this conclusion does not fully resolve Blackwell's right to relief, for he may have waived his right to object to the court's error. The discussion, prior to resumption of the trial, between the state trial judge and Blackwell discloses that Blackwell, though given an opportunity to do so, did not object to the prior day's procedures as explained to him by the trial judge. The record further shows that Blackwell's counsel voiced no objection for his client. The district court's conclusion that the error produced no harm to Blackwell neither addressed nor resolved the separate question of waiver.[4] *See Hopt v. Utah, supra,* 110 U.S. at 578, 4 S.Ct. 202; *Bustamante v. Eyman, supra,* 456 F.2d at 273. *See also Poulin v. Gunn,* 548 F.2d 1379 (9th Cir.), *petition for cert. filed,* —— U.S. ——, 98 S.Ct. 424, 54 L.Ed.2d 295 (1977).

Because no determination has been made on this issue, we vacate the judgment denying habeas corpus relief and remand this case to the federal district court for a determination whether, under the circumstances, the responses of Blackwell and his attorney to the judge's questions constituted an effective waiver of any objection to the constitutional error. On remand, the court should permit the parties to produce additional evidence, if they so desire, on that issue.

Reversed and remanded for further proceedings consistent with this opinion.

---

**3.** We perceive no constitutional error in the court's in-chambers investigation of the melee.

**4.** Neither the Iowa Supreme Court nor the federal district court addressed the waiver issue arising from Blackwell's lack of objection to

the procedure. Nevertheless, we feel the respondent raised that defense by alleging, in both the return to habeas corpus petition and the brief on this appeal, that neither Blackwell nor his counsel objected to the procedure.