Jerry Wayne HENDERSON, Appellee,

v.

A.L. LOCKHART, Director Arkansas Department of Correction, Appellant.

No. 87–2427.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1988.

Decided Jan. 10, 1989.

[redacted]

Jack Gillean, Asst. Atty. Gen., AAG, Little Rock, Ark., for appellant.

Paul J. James, Little Rock, Ark., for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and RE,* Chief Judge.

BEAM, Circuit Judge.

The State of Arkansas appeals from an order of the district court granting Jerry Wayne Henderson's petition for a writ of habeas corpus. The court found that Henderson had been denied effective assistance of counsel in pursuing his right of appeal, and that he was unfairly prejudiced because the issue underlying the appeal had merit and effective assistance would likely have yielded a different outcome. The court ordered the state to retry Henderson within 120 days or release him from custody. We initially stayed the district court's order, but now terminate the stay and affirm.

## I. BACKGROUND

Henderson was convicted of murder in the first degree on June 6, 1978 by a jury in the Circuit Court of Faulkner County, Arkansas. Henderson maintained that his wife's death was accidental. On June 19, the court entered its order committing Henderson to the custody of the Arkansas Department of Correction for a term of life.

We are here ten years later with the following situation:

1. There is no record of the evidence adduced at trial, documentary or testimonial.

2. The court reporter is now dead and her remaining notes, if any, cannot be transcribed by others.

3. Defendant Henderson's trial counsel filed on July 19, 1978, a timely motion for a new trial based upon the allegedly prejudicial entry by the trial judge into the jury deliberating room, which entry, according to the motion, was for the purpose of speeding up deliberations and avoiding a deadlocked jury. The defendant was not present at the time of this entry but prosecution and defense counsel were present.

4. Within a few months after trial, Mr. Henderson's trial counsel, George Hartje, became the presiding judge of the court in which the defendant was tried and the motion for new trial is pending.

5. Judge Hartje has always been and remains Mr. Henderson's attorney of record and the motion for new trial is still pending in the court over which Judge Hartje presided from 1979 through at least 1986.

6. The trial Judge, Russell Roberts, is now deceased.

7. Mr. Henderson's mother claims that the county sheriff, also now deceased, entered the jury room with the judge and counsel at the time referred to above.

## II. PETITIONER'S CLAIM

Henderson's habeas petition sets forth three grounds for relief. First, he claims that he was denied his right of appeal as granted as a matter of right under Ark.R. Crim.P. 36.1. Second, he claims that he was denied effective assistance of counsel in pursuing an appeal. His third claim states that the facts undergirding his first two claims render his further incarceration a violation of due process. The gravamen of this claim appears to be that given the trial judge's activities during jury delibera-

* The HONORABLE EDWARD D. RE, Chief Judge, United States Court of International Trade, sitting by designation.

tions and the post-trial conduct of his attorney, due process requires this court to consider the evidence adduced at trial to determine petitioner's guilt, and to grant relief if no such evidence is available for review. The district court appears to have decided the second claim, on the belief that such a decision was necessary to reach the third claim.

### A. Procedural Bar and Exhaustion

The state argues that Henderson is procedurally barred from pursuing any of these claims because he failed to exhaust his remedies in state court as required by *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977). Because these claims were not raised, and, according to the state, the time for filing an appeal has elapsed, Henderson is barred from habeas relief unless he can show cause and prejudice. We disagree.

■ Henderson is not, technically, barred from a direct appeal; he has complied with state procedures which have not yet run their course. He has been, however, met with insufficient and improper procedures which have yielded him an inadequate opportunity for relief should the situation warrant such relief. Therefore, we believe that the "cause and prejudice" standards outlined in *Wainwright* are not applicable.

#### 1. Compliance with State Procedure

■ The "cause and prejudice" test applies, of course, where a petitioner raises "contentions of federal law which were *not* resolved on the merits in the state proceeding due to [petitioner's] failure to raise them there as required by state proce-

dure." *See Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2507.

In Arkansas, a prisoner has 30 days from the date of an order by the trial judge denying post-conviction relief to file a notice of appeal. Ark.R.Crim.P. 36.9. As indicated, Henderson has had a motion for post-conviction relief pending in Faulkner County, Arkansas, Circuit Court since July 19, 1978. In the motion, he seeks a new trial based on improper conduct by the trial judge during jury deliberations. Technically, then, should this ten-year-old motion be denied, Henderson should have 30 days from that date in which to appeal.

Since Henderson's July 19, 1978, request for a new trial specifically alleges an improper entry into the jury room by the trial judge outside the presence of the defendant, and not in response to a request by the jury for additional instruction or information,[1] this claim raises, at least, a federal question as to whether Henderson was deprived of rights under the confrontation clause of the sixth amendment.[2] *See Blackwell v. Brewer*, 562 F.2d 596, 599–600 (8th Cir.1977). The state has the burden of proving that such deprivation, if it occurred, was harmless error. *See id.* at 600. The record demonstrates that the failure to have this claim resolved on the merits has not been the fault of Henderson. He raised the issue. It simply has not been ruled upon yet by the state court.

#### 2. Deficient Process and Opportunity for Relief

Under 28 U.S.C. § 2254(b), a federal habeas petitioner must exhaust state court remedies unless the corrective process available in state court proves to be inef-

---

1. Henderson's motion, as indicated, alleges that the purpose of the entry was to speed up deliberations and to avoid a "hung jury." At the hearing, Judge Hartje testified that he believed the allegations in the motion were true.

2. We do not mean to imply that merely because the defendant himself was not present during a court's additional instruction to a jury, that a constitutional claim is necessarily raised. *Compare Shields v. United States*, 273 U.S. 583, 588, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927) (prior notice to counsel and opportunity to object, or

presence of counsel, suffices where supplementary instructions are required either because asked for by the jury or for other reasons) *with id.* at 588–89, 47 S.Ct. at 479 (orderly conduct of jury trial entitles defendant to be present from the time the jury is empaneled). Here, Hartje's motion objected to the entry itself as well as its purpose: to hurry deliberations and avoid a hung jury. Given that the district court found this claim to have merit, we do not believe defense counsel's presence automatically defeats the confrontation clause claim.

fective to protect the rights of the person in custody. A direct appeal was still available in state court at the time the district court considered Henderson's petition for the writ. Therefore, the question is whether there is "no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981).

We question the opportunity for Henderson to obtain relief in state court (here, through an appeal) even if relief is clearly appropriate. The state contends that he is not entitled to an appeal, notwithstanding the Arkansas Criminal Procedure Rules, because too much time has elapsed. Similarly, no case has been cited or found which indicates that the Arkansas state court would now hear Henderson's claim. Under such circumstances, the prospect for a meaningful appeal is a matter of conjecture, and thus grounds for the district court to decide whether due process requires a new trial, *see Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971), given the confrontation clause claim raised in the 1978 motion for a new trial. The district court found that a deprivation had occurred, and the state has been unable to demonstrate that the deprivation was harmless error.

We also believe that the corrective process is otherwise deficient. Using the records before the district court, we outline briefly Henderson's experience in seeking redress. Initially, Henderson's lawyer filed the motion asking for a new trial and thereby stayed the deadline for filing a direct appeal. The motion set forth the grounds for a new trial.

The state knew of the motion and responded with an answer on July 30, 1978. For some reason, however, the motion was never ruled upon. Then, in January of 1979, Henderson's attorney became the judge in whose court his motion came to rest. The motion has not yet been ruled upon.

The next series of events concerned efforts to present the issue to the state court

on appeal. Henderson, directly or indirectly, asked his attorney to appeal. At the county jail, Hartje allegedly told Henderson that he would be back in the Faulkner County Jail for retrial in seven months. According to Henderson, Hartje had specifically said to him "go to prison and keep you[r] nose clean and you'll be back in seven months for retrial." After waiting seven months, Henderson began trying to assess what was happening with his case.

At some point in 1979 or early 1980, an appellate public defender checked to see if a notice of appeal had been filed. On April 29, 1980, the defender was notified that no appeal had been filed. The defender's office then ceased operations. It is not known whether Henderson was ever informed that no appeal had been filed.

At the same time, Henderson tried to secure a transcript of the evidence presented at the trial. A transcript would be necessary to determine whether the judge's entry into the jury room outside the presence of the defendant was reversible or harmless error. Since the motion alleged that the entry was for the purpose of avoiding a hung jury (meaning that at least one juror was expressing a reasonable doubt as to guilt of first degree murder), review of evidence indicative of guilt or innocence would appear to be necessary if the allegation is established. *Cf. Blackwell v. Brewer*, 562 F.2d 596, 600 (8th Cir.1977) (looking at record to determine whether judge's questioning of jury outside presence of defendant was harmless).

Henderson had not, of course, filed a notice of appeal at this time. However, it was not unreasonable for him to try to obtain a transcript before filing the notice. When filing an appeal under Ark.R.Crim.P. 36.9, the notice shall "include either a certificate by the appealing party or his attorney that a transcript of the trial record has been ordered from the court reporter * * * if, for the purposes of the appeal, a transcript if [is] deemed essential to resolve the issues on appeal."

Eventually, Henderson asked his mother (Ms. Grant) to inquire about getting a tran-

script of his trial. She went to the courthouse and was told it would cost $200.00. She did not have enough money. Henderson's attorney, then Judge Hartje, whom she claims to have been trying to contact continually since the trial, had not told either Henderson or his mother that Henderson had a right to a free transcript due to his indigence.

Henderson's mother was apparently his only outside aid in pursuing a remedy. In addition to attempting to reach Henderson's attorney and buy a transcript, she also appears to have contacted the probation office. While we do not know the full range of topics raised by Henderson's mother, the probation office wrote her a letter on May 5, 1981. It closed with the following paragraph:

> It is my opinion that there is no way that Mr. Henderson could be paroled at this point and may never with the attitude he has. My advise *is to go on with you [sic] life as though he doesn't even exist* and raise your granddaughter in peace.

(Emphasis added). The record shows no other actions taken by Ms. Grant on Henderson's behalf thereafter.

On June 23, 1982, Henderson sent Judge Hartje—who is still Henderson's attorney of record—one of a series of letters explaining his need for a transcript and assistance due to indigence. Judge Hartje did not respond.

On January 4, 1983, Henderson filed a motion to seek, in forma pauperis, state relief under Ark.R.Crim.P. 37.2, the Arkansas post-conviction remedy rule, and to compel production of a transcript. The motion was scheduled for a hearing on May 7, 1984, before Judge Hartje, who was, as earlier indicated, still Henderson's attorney of record. We know the state knew of the motion because the court coordinator sent the prosecuting attorney a copy of the motion when advising of the May 7, 1984,

hearing. Nobody knows whether a hearing was ever held. The state at one time, but not now, claimed that no motion had ever been filed. Motion to Dismiss of A.L. Lockhart, Designated Record at 8.

Finally, on March 5, 1983, Floy Berkowitz, the court reporter at Henderson's trial, died. At the time, Henderson's original motion had been pending for almost five years, and his most recent motion had been on file for two months. With the reporter's death, the chances of securing a transcript ended.

Under the circumstances, we believe further exhaustion of state remedies is unnecessary. There is no record upon which to determine whether the judge's communication with the jury was harmless error, and the state's posture in this case to date suggests that further delay and dilatory tactics would confront Henderson in securing a state court remedy. Based upon the myriad of irregularities that have already occurred, we think the district court was correct in considering the federal constitutional claims. *See Mucie v. Missouri State Dept. of Corrections,* 543 F.2d 633, 635–36 (8th Cir.1976).

## III. MERITS OF CLAIM

A hearing was held before a U.S. magistrate on Henderson's petition. The magistrate's findings were adopted by the district court. Since the district court makes a *de novo* review of the magistrate's findings, Fed.R.Civ.P. 72, the findings in the magistrate's report will not be disturbed unless clearly erroneous. *Compare* Fed.R. Civ.P. 52(a) *with* Fed.R.Civ.P. 72.

 Henderson's trial attorney (Hartje) stated at the hearing that he believed that everything contained in his motion for a new trial was true. At the same time, he also said, interestingly, that he did not believe there were meritorious grounds for appeal.[3] The judge who was alleged to

---

3. Recently, the Supreme Court had occasion to repeat its holding in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967):

> [A] criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that * * * there is no merit to the appeal.
>
> \* \* \* \* \* \*
>
> [C]ounsel may request leave to withdraw. The request "must, however, be accompanied by a brief referring to anything in the record

have entered the jury room is dead and his version is unavailable. However, Hartje stated that he was present in the jury room when the judge entered and his stated purpose, according to the motion for new trial, was to avoid a "hung jury." Henderson's mother claims that she saw Faulkner County Sheriff Castleberry enter the jury room with the judge. Hartje did not think that was the case.

The magistrate decided that the claim raised in Hartje's motion for a new trial had merit. He concluded that a new trial must be ordered or that Henderson be released. The question before us is whether the court was correct in ordering the writ. We believe it was.

■ We think that in a case where the integrity of the verdict has been brought into doubt, and the petitioner qualifies for collateral review, due process requires that there be a sufficient record of the proceedings to permit effective judicial review. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (reviewing sufficiency of evidence claim in habeas proceeding by asking whether "the record evidence could reasonably support a finding of guilt beyond a reasonable doubt"); *cf. North Carolina v. Alford,* 400 U.S. 25, 36–37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970) (evaluating voluntariness of guilty plea by examining the evidence of guilt produced). Even in cases where a petitioner is required to show cause and prejudice, and fails, the evaluation of prejudice usually entails an examination of the evidence of guilt. *See Wainwright v. Sykes,* 433 U.S. at 91, 97 S.Ct. at 2508 (evidence of guilt presented at trial negated any possibility of actual prejudice); *United States v. Frady,* 456 U.S. 152, 171,

102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). Finally, where cause is not established despite it being otherwise required, evidence is still reviewed when the claim suggests that a constitutional violation has probably resulted in the conviction of one who may actually be innocent. *See Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986).

Thus, we believe that in this case the Constitution requires that there be a sufficient record upon which a reviewing court can make some assessment of prejudice or guilt.

## IV. CONCLUSION

The granting of the writ is proper. Accordingly, the order appealed from is affirmed and the stay of that order is dissolved.

WOLLMAN, Circuit Judge, dissenting.

I would hold that Henderson has not established grounds entitling him to federal habeas corpus relief.

As I read the record, there was no illegal entry into the jury room by the trial judge and counsel. Henderson's trial counsel testified as follows at the habeas corpus hearing:

> [W]hat happened was we held this case in the municipal courtroom because the circuit courtroom was under some type of remodeling process. And when the time came for the jury to deliberate, there was no jury room, so everybody left the courtroom and left them in the courtroom.

Short of marching the jurors up the hill out of the courtroom-cum-jury room and then back down into the courtroom, there

---

that might arguably support the appeal." *Ibid.* Once the appellate court receives this brief, it must then itself conduct "a full examination of all the proceeding[s] to decide whether the case is wholly frivolous." *Ibid.* Only after this separate inquiry, and only after the appellate court finds no nonfrivolous issue for appeal, may the court proceed to consider the appeal on the merits without the assistance of counsel.

*Penson v. Ohio,* — U.S. —, —, 109 S.Ct. 346, 350, 102 L.Ed.2d 300 (1988) (quoting *An-*

*ders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)). While not identical to the situation here, we do not believe that Mr. Hartje's bare assertion that Henderson had no meritorious grounds for appeal can serve as a basis in this habeas proceeding for concluding that Henderson suffered no prejudice at trial warranting appellate relief. And, as the record shows, at the state court level, due to a breakdown in the system, Henderson was afforded no direct appeal.

was no way that the judge and counsel could have responded to the jury's inquiry without entering the room in which the jury was present. Had the exodus and reentry procedure been carried out, Henderson would have no claim that the trial court violated Arkansas law (Ark.Stat. Ann. § 43–2139 (Repl.1977)).

But let us assume that the trial court violated the statute by entering the jury room. Although the Supreme Court of Arkansas has held that violation of the statute can be reversible error, *Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986), not every violation of the statute results in prejudice so great as to require reversal. See *Martin v. State*, 254 Ark. 1065, 497 S.W.2d 268 (1973). Likewise, we have held that violation of the state statute does not necessarily rise to the level of a constitutional violation. *Isom v. Lockhart*, 847 F.2d 484 (8th Cir.1988).

We turn, then, to the evidence regarding the complained-of exchange between the trial court and the jury. The motion for new trial alleged in part that the trial court's appearance before the jury "was not as a result of the jury requesting additional instructions but was an effort on the part of the Court to hurry the deliberations or to at least avoid a hung jury." When questioned by Henderson's counsel at the habeas corpus hearing whether he had verified that the motion for new trial was accurate and correct, trial counsel answered that "[t]o the best of my knowledge and belief it was. I did not ask ... I did not hear the jury ask for instruction. All I was told was that they did and we are going in to instruct them."

During cross-examination by counsel for the state, trial counsel gave the following answers:

Q. Do you recall ... this is concerning the instructions to the jury that you were questioned about. Do you recall what that ... what that concerned?

A. It was in the nature of what the parole process would have been.

Q. And do you recall what they were instructed?

A. The judge just kind of ... he just kind of laughed and said, "I can't tell you the answer to that," or words to that effect. I can't give you that information.

Q. So the instructions that ... that is the subject of this motion then was not the jury instructions as we know them?

A. Oh, no, no. The jury instructions that were given prior to the jury retiring to deliberate their verdict was given right there in the open courtroom.

Q. And Mr. Henderson was present during that time—

A. And Mr. Henderson was present at that time.

Q. So the subject of this motion is a question that was asked by the jury that the judge stated he could not tell them anything about.

A. Yes.

Trial counsel went on to testify that to the very day of the evidentiary hearing he did not think that Henderson had any meritorious grounds for appeal.

At most, Henderson has established only a technical violation of Ark.Stat.Ann. § 43–2139 (Repl.1977). It is inconceivable to me that the appellate courts of Arkansas would have reversed Henderson's conviction on the basis of this showing. Likewise, Henderson has not established a violation of his federal constitutional rights of due process, confrontation of witnesses, and the assistance of counsel. Unlike the situation in *Blackwell v. Brewer*, 562 F.2d 596 (8th Cir.1977), there is nothing in the record that would support a finding that Henderson suffered prejudice as a result of being absent during the exchange that occurred between the trial court and the jury during the course of the jury's deliberations. It is highly unlikely that Henderson's absence during this time resulted in the jury's drawing any inferences adverse to him, nor does it come readily to mind that Henderson could possibly have offered any assistance to his counsel that could possibly have been to his benefit in terms of the ultimate question of guilt or innocence.

I would reverse the order appealed from and would remand with directions to dismiss the petition.