STATE of Iowa, Appellee,

v.

Terry Lee JOHNSON, Appellant.

No. 58730.

Supreme Court of Iowa.

June 30, 1976.

Bertram B. Metcalf, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., Gary L. Sissel, Asst. Scott County Atty., for appellee.

Heard before REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES, and HARRIS, JJ.

MASON, Justice.

Defendant Terry Lee Johnson was charged by county attorney's information with uttering a forged instrument in violation of section 718.2, The Code. At arraignment he entered a plea of not guilty and was later tried to a jury which returned a verdict finding him guilty of the crime charged. He appeals from judgment imposing sentence on that conviction.

The facts giving rise to this appeal transpired the evening of June 10, 1975, in

Davenport. Between 5:30 and 6:00 p. m. on that date defendant asked acquaintance Edward Hemby if he possessed some sort of identification defendant could use to get into a bar and dance that evening, as he had lost his wallet. Hemby gave defendant a "Missouri Liquor Control Commission" identification card bearing a photograph of Hemby.

About 7:00 p. m. defendant and a male companion entered the jewelry department of Ardan's Jewelers and Distributors in Davenport. Store clerks Barbara Hartman and Mrs. Emmalee Cusack were on duty at the time. Miss Hartman waited on defendant who requested to look at rings in the $50 to $75 price range. Defendant insisted on finding a ring which fit him rather than waiting several days for one to be sized. He finally chose an $89 diamond ring.

At this point, defendant inquired of Miss Hartman if he could pay for the ring with a federal income tax rebate check. This check was made out to Edward and Bonnie Hemby for the amount of $464.90. As identification, defendant produced the Missouri liquor control card, stating he did not have a driver's license. Miss Hartman's suspicions were aroused since, in her opinion, the picture on it did not resemble defendant.

As the check had already been indorsed, defendant signed it again in the presence of the two clerks and Mr. Tandy Fitzgerald, Ardan's floor manager. Miss Hartman testified this signature was not totally legible, but that the last name appeared to be spelled H-e-n-"d"-or-"b-y." Defendant claimed he was having trouble writing a clear signature because he was standing up and the pen was faulty.

When Mr. Fitzgerald noticed the signatures did not match up, he "followed through" by first telling defendant he had to go to the rear of the store for money to cash the check. He then proceeded to the radio department and asked John Frerichs to stay where he was. Fitzgerald next went to his office where he called the Hembys and then the police.

During this time defendant purchased cigarettes from a vending machine on the premises and his companion had left the scene after gazing at some watches. Upon Fitzgerald's return to the jewelry department, he signalled defendant into the diamond showroom and asked him why he was cashing a check that was not his. As Fitzgerald was pointing out the fact the signatures were not the same, Davenport Police Captain John Westerhof arrived on the scene. Defendant then stated the check was for rent Mr. and Mrs. Hemby owed him, an obvious change of story.

At the arrival of Lieutenant John Gano, defendant ran from the diamond showroom and in the process he almost knocked over a large display case from which fell an expensive clock. A silver arrangement was also run into and its contents scattered. It was, however, defendant's misfortune the front door opened inward. His slamming into it apparently delayed flight long enough for Captain Westerhof and John Frerichs to subdue him.

Officers Swanson and Chambers transported defendant to the county jail. On the way they picked up the second subject who had been in the store and was later found in the yard of the residence of another Davenport police officer about 300 yards from Ardan's.

Two witnesses testified to this fact before the trial court sustained defense counsel's objections and struck the evidence from the record.

At trial, both Mr. and Mrs. Hemby stated they had never seen the refund check before June 10 although they had been expecting to receive it. They testified the indorsements were not in their handwriting. Finally, it was pointed out the Hembys paid their rent to the apartment owner's daughter and son-in-law, Donny and Kathy Rickols. Defendant is a "brother-in-law by marriage" to the Rickols.

At the end of the State's evidence defendant moved for a directed verdict which was overruled. He presented no evidence in defense and did not renew his motion for directed verdict. At the hearing on his motion for new trial defense counsel asked

for permission to reopen the case since he neglected to renew his motion for directed verdict. Permission was granted to reopen. Defendant's motion was renewed and overruled. In this regard we call attention to *State v. Valde,* 225 N.W.2d 313, 317, decided January 22, 1975, where this court announced that, "where a defendant's motion to direct a verdict, made at the close of state's evidence is denied, and no further evidence is submitted it is not necessary for defendant to renew such motion in order to preserve any alleged error for review in this Court. * * * [citing authorities]."

Further factual and procedural matters will be discussed as they become relevant to resolution of the issues presented by this appeal.

■ I. Defendant contends he was denied a due process right to be tried by an impartial judge by reason of certain in-chambers remarks which occurred during a colloquy between the court and the defendant.

The trial transcript discloses that during the morning session of the second day of trial defendant failed to return following a recess. The trial court ordered that a bench warrant issue and recessed until 2 p. m.

When defendant could not be found by 2 p. m. defense counsel and the prosecutor were heard in chambers on the question of trial proceeding in defendant's absence. The defense moved for a continuance and for a mistrial. At the conclusion of arguments by counsel the court continued the case until the following morning in order to make absolutely certain defendant had voluntarily absented himself. Before dismissing the jury for the day the court questioned whether any of the jurors had heard or seen anything through the news media regarding the case. All answered in the negative and were admonished to refrain from reading or listening to the news before the next session.

The following morning defendant was voluntarily present again and ready to proceed with the case. At this point counsel renewed his motion for mistrial ("or, as I am calling it today, a retrial") on the grounds the jury would be apt to realize the continuance resulted from defendant's unexplained absence from trial and would be prejudiced against defendant because of these circumstances.

The motion was denied. The court indicated the possibility he would instruct on the flight.

Before proceeding with trial the following colloquy took place between the trial court and defendant out of the jury's presence:

"MR. METCALF: May my client make a statement, Your Honor, as to the reason for his absence yesterday?

"THE COURT: Yes, he may.

"THE DEFENDANT: Well, Your Honor, sir, right before I left yesterday Mr. Metcalf remembers I stopped out there and talked to him. I said, 'There is one witness that, if I could just get ahold of him, it's the only one I can find.'

".THE COURT: You took off after you talked to Mr. Hemby and discovered that the games you were playing weren't going to go.

"THE DEFENDANT: Sir—Mr. Metcalf, would I come by you and say it right after I talked to him?

"THE COURT: You went and talked to Hemby, that witness, which is all right, but they played games of trying to avoid process. I don't know if you knew about that or not.

"THE DEFENDANT: No, sir. I didn't know where this guy lived at.

"THE COURT: Where is this witness you need? All the resources of the State of Iowa are at your beck and call. You tell Mr. Metcalf who the witness is, and he knows how to do it. I don't believe you.

"THE DEFENDANT: Your Honor, sir, I drove about three hundred miles last night and I come back about three hundred just to try and find him.

"THE COURT: I don't believe you. You are a liar, Mr. Defendant, and you are an absconder. See, I can't believe you.

"THE DEFENDANT: It's not true.

"THE COURT: You have no right to expect anybody in authority to believe you. If the jury believes you, that's their problem.

"THE DEFENDANT: How can I prove myself innocent?

"THE COURT: Well, perhaps you are not innocent, I don't know. I don't know what Mr. and Mrs. Hemby are going to testify to.

"THE DEFENDANT: I do, that I am guilty, and I am not.

"THE COURT: Well, you can testify to that fact, but you are not going to run any more. It wasn't wise. I don't know how to—I don't know whether I am going to instruct on the flight or not."

No objection was raised during trial or in the motion for a new trial questioning the judge's impartiality; rather, the matter is raised here for the first time. And it is significant the defense did not feel the remarks were sufficiently prejudicial to object at any time to the trial judge. Furthermore, the fact should be stressed the judge's remarks were not made before the jury.

It has been stated " * * * courts are acutely aware of defendant's right to a fair trial and it is essential for trial courts to be impartial and circumspect in the treatment of defendant, his counsel and witnesses. * * * [citing authority]. 'It is vastly more important that the attitude of the trial judge should be impartial than that any particular defendant, however guilty he may be, should be convicted.' * * * [citing authority]." *State v. Kimball,* 176 N.W.2d 864, 867 (Iowa 1970).

Most cases dealing with prejudicial remarks by the judge involve ones in which such remarks were made before the jury. (See Annot., 34 A.L.R.3d 1313). Remarks before the jury " * * * are subject to special scrutiny because of the recognized fact that 'the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may

prove controlling.' " *United States v. Dellinger,* 472 F.2d 340, 386 (7 Cir. 1972), cert. den., 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706, 22 A.L.R.Fed. 159, 214. See *State v. Kimball,* supra; *State v. O'Kelly,* 211 N.W.2d 589, 596 (Iowa 1973), cert. den., 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240, reh. den., 419 U.S. 887, 95 S.Ct. 160, 42 L.Ed.2d 131.

Some courts, while not stressing the fact a remark occurred outside the jury's presence, have looked over the trial transcript to find deviations from neutrality, presumably for deviations before the jury. Thus, in *United States v. Sutherland,* 463 F.2d 641, 650 (5 Cir. 1972), cert. den., 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668, the judge stated at a pretrial hearing before defendant's second trial he had no doubt of defendant's guilt. The circuit court noted it would be "naive" to assume the judge who had presided at defendant's first trial would not reach some conclusion as to defendant's guilt. " * * * Such an opinion [not expressed to the jury] by the court by no means indicates he cannot afford the defendant a fair and impartial trial." A search of the transcript failed " * * * to show the slightest deviation from the course of neutrality."

In *Shrader v. Riddle,* 401 F.Supp. 1345, 1349 (W.D.Va.1975), the trial judge remarked at a hearing defendant was obstructing justice by not cooperating with his court-appointed attorney. The district court noted it was true defendant had been uncooperative and that his actions " * * * did indeed delay the disposition of the second case and the judge's remarks concerning it are *accurate* and far from prejudicial. Furthermore a look at the trial transcript doesn't reveal any further evidence on which to base such a charge." (Emphasis supplied).

The court in *United States v. Dellinger,* 472 F.2d at 385–386, 22 A.L.R.Fed. at 214, aptly declared:

"The system of justice can not work if a defendant is permitted to prevent a trial or destroy the effect of an adverse verdict by

his own deliberate misconduct. Moreover, it makes good sense to allow reasonable latitude for normal human sensitivity in judging whether responses to provocation deliberately offered are excessive. A defendant ought not to be rewarded for success in baiting the judge and prosecutor."

Along this same line is this statement in *Mechling v. Slayton,* 361 F.Supp. 770, 774 (E.D.Va.1973):

" * * * [M]isconduct by a state trial judge reaches the level of a constitutional deprivation only when the guise of impartiality incumbent upon his function is destroyed, thereby demolishing the defendant's 'credibility, his presumption of innocence, and any chance whether guilty or innocent, that he had of a successful defense * * *.' * * * [citing authorities]."

We have scrutinized the trial transcript and conclude, without hesitation, it fails to show the slightest deviation before the jury from the course of neutrality required of a trial judge as announced in the authorities cited. We find no basis in the record to support defendant's contention the language used by the trial judge in addressing defendant, even though out of the presence and hearing of the jury, had a chilling effect on defendant and his willingness and ability thereafter to conduct his defense.

Although we do not approve the intemperate remarks made by the trial judge, it is this court's opinion these remarks did not violate defendant's rights to due process. The trial was fair.

■■■ II. Defendant also asserts the trial court erred in denying his mistrial-retrial motions. It is argued that "even though the Record is silent as to the fact of defendant's voluntary absence from the courtroom and the reasons for such absence, the jury composed of intelligent people, probably guessed—when the trial was adjourned in mid-morning—that the defendant had left the courthouse. Such speculation was bound to adversely affect Terry Lee Johnson."

The motions were denied, although defendant's motion for a continuance was granted, at which time trial court told the jury:

"Not even judges keep their promises about the length of time we are going to take. It has become necessary in the interests of justice to continue this case until tomorrow morning at eleven o'clock. * * [the jury was then generally admonished]."

This court has recently touched upon the issue presented here by stating:

" 'As for argument that the jury may have "speculated adversely to the [appellant] about his absence from the courtroom," we need only say that, standing alone, it does not establish the necessary "reasonable possibility of prejudice." * * [citing authorities].' *United States v. Jones,* 170 U.S.App.D.C. 362, 517 F.2d 176, 182 (D.C.Cir.1975)." *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976).

The Supreme Court has on several occasions ruled the voluntary absence of a defendant from trial forfeits his right of confrontation.

" '[W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present.' (Citations omitted)." *Taylor v. United States,* 414 U.S. 17, 19, 94 S.Ct. 194, 195, 38 L.Ed.2d 174.

If trial may proceed upon an accused's voluntary absence, it is certainly within a trial court's power to grant a continuance in a defendant's absence. If anything, such a procedure grants defendants perhaps undeserved protection. The trial court's ruling upon the motion for a mistrial was correct.

■■ III. Another issue presented for review arises from defendant's challenge to the court's instructions. Defendant requested the following language be incorpo-

rated into instruction 12 (proposed instruction 13):

"You are to reach your verdict according to the law as given you in these instructions and the evidence produced and submitted to you in open court, taking into consideration all the facts and circumstances as disclosed by the evidence as well as the lack or want of evidence, if any, on the part of the State, and you will consider all fair and reasonable inferences and deductions which you may draw therefrom."

While instruction 12, in pertinent part, stated, "You are to determine the questions submitted in this case from the evidence offered in the record, and the law as given you in these instructions," the language requested did appear substantially in instruction 3 on reasonable doubt.

"All instructions given must be read and considered together and related to each other, not piecemeal or in artificial isolation. * * * [citing authorities]." *Dickman v. Truck Transport, Inc.*, 224 N.W.2d 459, 464 (Iowa 1974).

" * * * If an instruction covers the legal principles involved, as they are raised by the facts in the case, the trial court has the right to choose its own language to best accomplish that purpose. * * * [citing authorities]." *State v. Robinette*, 216 N.W.2d 317, 318 (Iowa 1974).

" * * * [R]equested instructions may be properly refused if a point thereby raised is substantially given or covered by those submitted. * * * [citing authorities]." *State v. Orozco*, 202 N.W.2d 344, 347 (Iowa 1972).

Where the language employed in a trial court's reasonable doubt instruction bearing upon the lack or absence of evidence by the state was not utilized in *other* instructions, this court has held error did not exist. See *State v. Lass*, 228 N.W.2d 758, 766–767 (Iowa 1975) and *State v. Hall*, 235 N.W.2d 702, 724–725 (Iowa 1975).

Defendant's contention in this regard is without merit.

IV. Another issue presented for review stems from defendant's contention the trial court erred in permitting the State, over defendant's objection, to introduce testimony concerning the conduct and action of a second subject not being tried with defendant subsequent to Johnson's arrest.

Testimony was initially received by the trial court from two witnesses for the State to the effect that while transporting defendant to police headquarters following his arrest, the police officers responded to a call for assistance from another off-duty law enforcement official. He was holding a subject found hiding in his backyard, which is about 300 yards from Ardan's Discount Store. The officers testified the subject had been in Ardan's previously.

One of the witnesses, Captain Westerhof, testified that Officer Chambers and Swanson transported Johnson to the county jail. He was asked if the only part these officers played in this matter was to transport Johnson to the county jail. He answered, "Yes. On the way they picked up the second subject that had been in the store." The prosecutor then asked, "I see. This is the subject that was with—." At this point defense counsel objected as incompetent, irrelevant and immaterial with reference to the second subject. The general objection was overruled. Westerhof was further asked on direct examination whether the police were able to locate the second subject. Over defendant's general objection the officer testified "the subject had been in the store and he had left and went to Thirty-seventh Street, I'm not sure of the address. I believe it's 210. It's the residence of one Officer Gene Wall of the Davenport Police Department, and he was attempting to hide in the yard."

Officer Swanson testified that he and another officer took custody of Johnson. He was then asked, "Did you go directly from Ardan's, then, to the Davenport Police Station or county jail?" Swanson answered, "No, we didn't." He was then asked, "And where did you go?" and responded, "Shortly after we got the subject into the car we were given another call to assist an officer at his home because he had one subject in custody that was hiding in his

back yard." The prosecutor then asked, "I see, and where was this located at?" Defense counsel then urged a general objection pointing out that the question called for a narration of a matter occurring subsequent to any events which might properly go to establish the charge against the defendant. The objection was overruled.

After defendant's counsel continued to object to any further detailing of what took place with reference to the second subject, the trial court changed its ruling announcing for the record:

"THE COURT: I am going to sustain Mr. Metcalf's objection. All of the questions of this witness and of previous witnesses that have to do with a person or persons alleged to have been with Mr. Johnson subsequent to being together at Ardan's is stricken from the record. You will put it from your mind, you will not consider it in your deliberations. Proceed. You may consider the testimony of there being another person at Ardan's with him, but the testimony of the officers regarding another person subsequent to that person being at Ardan's is stricken from the record."

■ We can conceive of at least three reasons why defendant's contention is without merit. First, a party may not wait until an answer is given and then lodge his objection if the answer is not satisfactory. He cannot speculate upon the advantage or disadvantage of the witness's reply to the question without waiving his right to object. See *Kuiken v. Garrett,* 243 Iowa 785, 804, 51 N.W.2d 149, 160; *State v. Mabrey,* 245 Iowa 428, 431, 60 N.W.2d 889, 891.

■ Second, unless reasons for the objection are obvious the general objection of incompetent, irrelevant and immaterial is not sufficiently specific in calling the court's attention to the reason the proposed evidence is inadmissible when reliance is placed by the objector upon *incompetency.* The evidence may be thought to be incompetent on many different grounds which may or may not appear on the surface and the court to which it is offered is entitled to know on what grounds its competency is

challenged. The word incompetent as applied to evidence means no more than inadmissible, and thus cannot be said to state a ground of objection. *Ferris v. Riley,* 251 Iowa 400, 410, 101 N.W.2d 176, 182. Cf., *State v. Clay,* 213 N.W.2d 473, 477 (Iowa 1973).

Third, in *State v. Bolds,* 244 Iowa 278, 282, 55 N.W.2d 534, 535–536, this court declared:

" * * * Jurors have sworn to try the case in accordance with law and the instructions of the court, and it is only in extreme cases that we can presume they have disregarded their oaths and ignored the strong direction of the court which told them they must not consider stricken testimony."

More recently, this court has held stricken evidence must have been " * * * so prejudicial, its effect upon the jury could not be erased by this procedure and defendant was denied a fair trial. Ordinarily the striking of improper testimony cures any error. * * * [citing authority]. Only in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained, despite its exclusion, and influenced the jury is the defendant denied a fair trial and entitled to a reversal. * * [citing authorities]." *State v. Peterson,* 189 N.W.2d 891, 896 (Iowa 1971). See also *State v. Mattingly,* 220 N.W.2d 865, 870–871 (Iowa 1974).

■ The testimony of these two witnesses which defendant contends was challenged by his objections was not so prejudicial its effect upon the jury could not be erased by the procedure adopted by the trial court. It was not of a type that its prejudicial effect on the jury remained, despite its exclusion.

There is still another reason why defendant's contention lacks merit. Other than the previously mentioned objections, defense counsel submitted no motion for a mistrial based upon the trial court's actions in this connection; neither was the matter raised in defendant's motions for a directed verdict or for a new trial. In short, the trial court was never at any time informed defendant considered the sua sponte strik-

ing of the testimony inadequate or in some manner unfair.

Clearly, a motion for mistrial would have been the most effective method of apprising the trial court of the contentions defendant raises here. Yet, the trial judge was never given a chance to rule. And, "we have held the obligation to comply with procedural rules must be substantially observed or the rights of the parties may be lost in a welter of confusion. * * * [citing authority]. Failure of defendant to reasonably exercise his procedural rights in his trial necessarily limits the grounds the appellate court will consider. * * * [citing authority]." *State v. Clark,* 187 N.W.2d 717, 719 (Iowa 1971).

In other words, a " * * * defendant cannot sit by and fail to avail himself of legal procedures to secure a fair trial and later raise lack of the same procedures as grounds for a new trial." *State v. Curtis,* 192 N.W.2d 758, 759 (Iowa 1971).

Defendant was not denied a fair trial.

V. Defendant's motion for a new trial raised no points not discussed above. The trial court did not err in overruling it.

Every contention and assertion of defendant has been considered whether specifically mentioned in this opinion or not and we have found none with merit.

The case is—Affirmed.