**STATE of Iowa, Appellee,**

v.

**Lloyd Foster BENNETT, Appellant.**

**No. 91–1793.**

Court of Appeals of Iowa.

May 4, 1993.

**44**

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas G. Fisher, Jr., Asst. Atty. Gen., John P. Sarcone, County Atty., and Nan Horvat, Asst. County Atty., for appellee.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

DONIELSON, Judge.

Lloyd Bennett appeals his conviction and sentence, following a jury trial, for first-degree murder.

On October 25, 1990, the State charged Lloyd Bennett by trial information with first-degree murder. The matter proceeded to a jury trial.

At trial, the State produced the testimony of Officer Madison. Madison testified that, on September 16, 1990, a transient reported he had found a dead body. The body was later determined to be Elizabeth Rumbaugh. Approximately twenty minutes after the transient's report, Officer Roland was called to a corner some four blocks from where Rumbaugh's body was found. Roland found Bennett passed out in a nearby parking lot. Roland noticed Bennett smelled of alcohol, had bloodshot eyes, and appeared incoherent and confused. Roland also noticed blood on Bennett's shirt and pants. Roland then arrested Bennett.

The State also produced the testimony of serologist Linda Sawyer. Sawyer testified the blood found on Bennett's clothing and hands was consistent with Rumbaugh's blood types and inconsistent with Bennett's own blood type. Harold Deadman, an FBI special agent, testified about several DNA tests he had performed on the blood. Deadman stated the blood's DNA profile matched the DNA profile of Rumbaugh. According to Deadman, the chance of a coincidental match was 1 in 9000.

Dr. Gauger testified about the autopsy he performed on Rumbaugh. He stated Rumbaugh died as the result of either a severe blow to the head or strangulation. Gauger also stated he found fresh abrasions near Rumbaugh's vaginal area which could be consistent with consensual or non-consensual sexual activity. Defense counsel objected to this testimony on the ground that it was outside the minutes of testimony for this witness. The trial court overruled the objection and admitted the testimony. Also, a dentist, Dr. Chapman, testified the bite marks found on Rumbaugh's body matched Bennett's teeth.

The State also produced the testimony of several witnesses who had seen Rumbaugh and Bennett sitting together at a bar on the evening of September 15. One witness testified Rumbaugh and Bennett did not leave the bar together. Other witnesses testified they had seen Bennett on the morning of September 16 in the general area where Rumbaugh's body was found.

Officer Rowley testified regarding his investigation of this crime. Rowley specifically testified about what different witnesses had said regarding the time Rumbaugh and Bennett had left the bar. Defense counsel did not object to this evidence.

Following the presentation of all the evidence, Bennett objected to jury instruction No. 16A, which stated as follows: "Malice may be concluded from the commission of willful injury which results in death." The court overruled the objection and submitted the instruction to the jury. The jury found Bennett guilty of murder in the first de-

gree. The district court entered judgment and sentenced Bennett to life imprisonment.

Bennett now appeals. Bennett contends the district court erred in (1) submitting an improper jury instruction, and (2) admitting testimony which exceeded the minutes of testimony. Bennett also contends he received ineffective assistance of counsel by counsel's failure to object to allegedly prejudicial hearsay testimony.

**I. Jury Instruction No. 16A.** Bennett first contends the district court erred in submitting instruction No. 16A to the jury. Specifically, Bennett argues the instruction violated his right to due process because it allowed the jury to infer malice aforethought from the commission of willful injury. Bennett also complains this jury instruction incorrectly stated the law because it failed to mention deliberation. Finally, Bennett contends the instruction constituted an improper judicial comment on the evidence.

■ Our review of jury instructions is for errors of law. *State v. Breitbach,* 488 N.W.2d 444, 449 (Iowa 1992). However, when a defendant is alleging error involving a constitutional right, we make an independent evaluation of the totality of the relevant circumstances to determine if such an error was made. *Rinehart v. State,* 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries,* 417 N.W.2d 237, 239 (Iowa App.1987).

■ Jury instructions are designed to explain the applicable law to the jurors so the law may be applied to the facts proven at trial. *State v. Freeman,* 267 N.W.2d 69, 71 (Iowa 1978). The district court has a duty to ensure the jury understands the issues it must decide. *Clinton Land Co. v. M/S Assocs., Inc.,* 340 N.W.2d 232, 234 (Iowa 1983); *McDivitt v. Des Moines City Ry.,* 141 Iowa 689, 697–98, 118 N.W. 459, 463 (1909). The district court also has a duty to ensure the jury understands the law it must apply. *Sanders v. Ghrist,* 421 N.W.2d 520, 522 (Iowa 1988). In evaluating this, we must read all of the instructions together, not piecemeal or in artificial isolation. *Id.; Clinton Land Co.,* 340 N.W.2d at 234. We must reverse and or-

der a new trial if the instructions as a whole are insufficient to convey the applicable law. *Sanders,* 421 N.W.2d at 522 (citation omitted).

**A. Constitutionality of Jury Instruction No. 16A.** Bennett first contends instruction No. 16A violated his right to due process.

The jury was given uniform instructions on first-degree murder. These included felony murder instructions and standard instructions defining malice. Bennett specifically challenges instruction No. 16A, based on Iowa Criminal Jury Instruction 700.9 which stated "Malice may be inferred from the commission of *(felony)* which results in death." In other words, this instruction provides that malice can be concluded from the commission of a forcible felony. In this case, the forcible felony was willful injury.

■ Murder is committed when "a person kills another person with malice aforethought." Iowa Code § 707.1 (1991). Murder is in the first degree when committed "while participating in a forcible felony." Iowa Code § 707.2(2) (1991). A "forcible felony" includes a felonious assault. Iowa Code § 702.11 (1991). Willful injury is a class "C" felony. Iowa Code § 708.4 (1991). In *State v. Ragland,* 420 N.W.2d 791, 793 (Iowa 1988), our supreme court upheld the constitutionality of Iowa's felony murder rule when the underlying felony was willful injury. However, if the State is not required to prove malice, "then there would be a violation of due process." *Id.* at 794.

Bennett argues the language in *Ragland* requires the State to prove both malice aforethought and intent to cause injury. Therefore, he contends malice can not be inferred from the participation in a forcible felony. The court in *Ragland* had held:

In the context of willful injury as the underlying felony, it is true that evidence establishing the intent required for that crime will often be the same as that proving the malice aforethought required for murder. However, malice aforethought and intent to cause serious inju-

ry are distinct elements and the presence of one does not necessarily prove the presence of the other. The State was required to prove both elements. 420 N.W.2d at 794.

■ We are not persuaded by Bennett's argument. Under *Ragland,* the court recognized a difference existed between the intent to commit a forcible felony (willful injury) and malice aforethought to commit murder. *Id.* However, *Ragland* made no finding regarding whether malice could be inferred from the participation in the underlying felony. We will continue to recognize the rule that malice may be implied from the commission of a felony which results in death. *See Schrier v. State,* 347 N.W.2d 657, 666 (Iowa 1984); *State v. Taylor,* 287 N.W.2d 576, 578 (Iowa 1980).

■ Under the jury instructions submitted to the jury, the State was required to prove malice. We find Bennett's due process rights were not violated. *See Ragland,* 420 N.W.2d at 794.

■ **B. Whether Jury Instruction No. 16A Correctly Stated the Law.** Bennett also complains instruction No. 16A is incorrect because it does not fully instruct the law. Specifically, Bennett contends the instruction is incorrect because it fails to mention deliberation.

To support a conviction for murder in the first degree, the jury is required to find malice aforethought. Iowa Code § 707.1 (1991). Here, the jury was given two separate instructions on malice. In addition to instruction No. 16A, the jury was also given instruction No. 16. This instruction, based on Iowa Criminal Jury Instruction 700.7, stated:

> "Malice" is a state of mind which leads one to intentionally do a wrongful act to the injury of another out of actual hatred or with an evil or unlawful purpose. It may be established by evidence of actual hatred or by proof of a deliberate of fixed intent to do injury. It may be found from the acts or conduct of the defendant and the means used in doing the wrongful and injurious act. Malice requires only such deliberation that

would make a person appreciate and understand the nature of the act and its consequences as distinguished from an act done in the heat of passion.

> "Malice aforethought" is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time. It is sufficient if it exists any time before the killing.

Jury instructions must be read and considered as a whole. *State v. Johnson,* 243 N.W.2d 598, 605 (Iowa 1976). Reading instruction No. 16A (allowing an inference of malice from the commission of a forcible felony) with instruction No. 16 (defining malice and malice aforethought), it is clear the jury was correctly instructed on the degree of deliberation which must accompany malice.

**C. Whether Jury Instruction No. 16A Constituted an Improper Judicial Comment on the Evidence.** Finally, Bennett argues this instruction unduly emphasized certain evidence. We do not find instruction No. 16A emphasized any particular theory of the case, other than to accurately state the law of felony murder. We affirm on this issue.

**II. *Whether Dr. Gauger's Testimony Exceeded the Minutes of Testimony.*** Bennett next argues the district court erred in admitting testimony which exceeded the minutes of testimony and was highly prejudicial. Specifically, he contends the district court should not have admitted Dr. Gauger's testimony that Rumbaugh's injuries could be consistent with sexual acts.

■ On evidentiary matters, we review for an abuse of discretion. In order to show an abuse of discretion, one generally must show that the court exercised its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor,* 132 Vt. 603, 326 A.2d 138, 140 (1974)).

■ Iowa Rule of Criminal Procedure 5(3) requires the State to file, with the trial

information, minutes of evidence of each witness whose testimony the prosecutor expects to offer at trial. The minutes must provide "a full and fair statement of the witness' expected testimony." Iowa R.Cr.P. 5(3). The purpose of the rule is " 'to assure minutes which would eliminate most claims of foul play and would provide meaningful minutes from which a defense could be prepared.' " *State v. Ristau*, 340 N.W.2d 273, 274 (Iowa 1983) (quoting *State v. Walker*, 281 N.W.2d 612, 612–13 (Iowa 1979)). The adequacy of minutes must be determined on a case-by-case basis. *Id.* (citing *Walker*, 281 N.W.2d at 614.)

 The minutes of testimony in relation to Dr. Gauger's testimony, in relevant part, stated as follows:

> [Dr. Gauger] will testify to [his] observations of Elizabeth Rumbaugh's *external appearance and then internal appearance during the course of the autopsy.*
>
> \* \* \* \* \* \*
>
> [He] will testify to any and all of these matters in detail and, in addition, will testify to all facts and information disclosed to the defendant through discovery or depositions in this case.

(Emphasis added). At trial, the medical examiner testified Rumbaugh had contusions and lacerations in her vaginal area which occurred shortly prior to her death. The medical examiner further testified such injuries could have been the result of sexual activity.

The medical examiner was well within the minutes of testimony when he testified about the injuries suffered by the victim. It is reasonable to assume the medical examiner would describe the injuries Rumbaugh suffered at or around the time of her death. The injuries to Rumbaugh's vaginal area clearly were part of Rumbaugh's external and internal appearance. We find the minutes of testimony sufficiently provided Bennett with notice of the nature of the medical examiner's testimony.

 Furthermore, we find this testimony was admissible under Iowa Rule of Evidence 403. Any danger of unfair prejudice did not outweigh the probative value of this evidence. The severe beating of Rumbaugh (including bruises, contusions, lacerations, and bite marks) was highly probative of Bennett's malice. This highly probative evidence was not outweighed by the medical examiner's testimony that the vaginal injuries may or may not have been the result of sexual activity. The district court did not abuse its discretion in admitting this testimony of the medical examiner.

**III. *Ineffective Assistance of Counsel.*** Bennett next contends he received ineffective assistance of counsel by the failure of his trial counsel to object to hearsay testimony. Specifically, he contends his trial counsel was ineffective by failing to object to Officer Rowley's testimony of what several persons told him in the course of his investigation.

 Where the record on direct appeal is not adequate to permit us to resolve the issue, we preserve the defendant's claim for postconviction proceedings so the facts may be so developed. *State v. Koenighain*, 356 N.W.2d 237, 238 (Iowa App. 1984). This also gives the allegedly ineffective attorney the opportunity to explain his or her conduct. *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978).

 We conclude there is an inadequate record for us to adjudicate defendant's claim without counsel's explanation for his conduct. The failure to object to Officer Rowley's testimony may be in keeping with the defense strategy which only defense counsel can explain. We therefore preserve defendant's ineffective assistance of counsel claim for a later proceeding.

The costs of this appeal are taxed to Bennett.

For all the reasons stated, the judgment of the district court is affirmed.

**AFFIRMED.**

OXBERGER, C.J., concurs.

SCHLEGEL, J., dissents.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

The trial court instructed the jury in the case, giving instructions allowing a finding of first-degree murder if the jury found the killing took place in the commission of a forcible felony—specifically "Willful Injury." Hence, the court instructed the jury it might find the defendant guilty under the "felony-murder" rule. Iowa Code section 707.2 (1991) states in relevant part:

A person commits murder in the first degree when the person commits murder under any of the following circumstances:

\* \* \* \* \* \*

(2) The person kills another person while participating in a forcible felony.

A forcible felony is defined in Iowa Code section 702.11 (1991) as follows:

A *"forcible felony"* is any felonious child endangerment, assault, murder, sexual abuse other than sexual abuse in the third degree committed between spouses or in violation of section 709.4, subsection 2, paragraph "c" subparagraph (4), kidnapping, robbery, arson in the first degree, or burglary in the first degree.

Willful injury is defined in Iowa Code section 708.4 (1991) as follows:

Willful Injury.

Any person who does an act which is not justified and which is intended to cause and does cause serious injury to another commits a class "C" felony.

The trial court gave the uniform instruction on "malice" and also gave instruction 16A, advising the jury how malice might be found, as follows:

### INSTRUCTION NO. 16A

Malice may be concluded from the commission of Willful Injury which results in death.

It is this instruction to which the defendant objects. I believe the instruction was in error and it prejudiced the defendant.

Both the defendant and the State rely upon *State v. Ragland*, 420 N.W.2d 791 (Iowa 1988). In that case, the court stated:

If, as defendant argues, the State was not required to prove malice, then there

would be a violation of due process. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970) (due process protects accused against conviction except by proof beyond a reasonable doubt of every fact necessary to constitute the crime charged).

\* \* \* \* \* \*

We do not believe that our felony-murder rule violates due process. The legislature has the right to prescribe those acts which are murder and to further define acts which constitute first-degree murder. *In enacting section 707.2(2), the legislature did not relieve the State of proving any element of murder nor did it create any presumptions which shifted the burden of proof from the State to the defendant.* (Emphasis added.) ... In [*State v.*] *Nowlin* [244 N.W.2d 596, 604–05 (Iowa 1976)], we pointed out that not all killings which occur during designated felonies are first-degree murder. Rather only *murders* which occur during designated felonies are first-degree murder. Under our statute the difference between killing and murder is malice aforethought. If the State does not prove this malice there can be no finding of murder. *See State v. Oliver*, 341 N.W.2d 744, 747 (Iowa 1983).

In the context of willful injury as the underlying felony, it is true that evidence establishing the intent required for that crime will often be the same as that proving the malice aforethought required for murder. However, malice aforethought and intent to cause serious injury are distinct elements and the presence of one does not necessarily prove the presence of the other. The State was required to prove both elements.

*Ragland*, 420 N.W.2d at 794.

In the present case, the court's instruction number 16A violates the principles set out above in *Ragland* by allowing the jury to conclude from a finding of willful injury that resulted in death that defendant carried out that injury with malice afore-

thought. The jury would have the right to so find, under proper instructions, but the court invited the jury to so find only because the jury might find the defendant committed willful injury. This was error. I do not believe, given this instruction, it can be said the defendant did not suffer prejudice from that error.

I also believe defense counsel lapsed in the failure to object to the hearsay testimony of officer James Rowley. I would find such lapse was ineffective assistance of trial counsel and it prejudiced the defendant since it refuted the evidence the defendant and the decedent victim did not leave the bar together.

I would reverse the case for a new trial.