**STATE of Iowa, Appellee,**

v.

**Charles Edward LASAGE, Appellant.**

No. 93–226.

Court of Appeals of Iowa.

Aug. 25, 1994.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Bridget Chambers, Asst. Atty. Gen., John Sarcone,

County Atty., and Nan M. Horvat, Asst. County Atty., for appellee.

Considered by DONIELSON, C.J., and HABHAB and HUITINK, JJ.

HUITINK, Judge.

Charles Lasage appeals his first-degree murder conviction for the murder of eleven-year-old Rosalyn Barnes. We affirm.

Rosalyn was last seen alive on October 14, 1991, after eating dinner at the Trinity United Methodist Church in Des Moines. Shortly after midnight on October 15, a citizen found her body near Adventureland Drive in Altoona.

Lasage filed a motion to dismiss based upon the State's failure to file an information against him within forty-five days of his arrest as required by Iowa Rule of Criminal Procedure 27(2)(a). The State acknowledges it filed a trial information more than forty-five days after Lasage's initial arrest.

Lasage argued he was the subject of intense investigation following his arrest and was arrested on a parole violation as a result of the murder investigation. He claimed the speedy information period should be measured from his initial arrest. The trial court overruled the motion to dismiss.

The State filed a motion in limine seeking to exclude any evidence relating to juvenile court proceedings or human services reports concerning Rosalyn Barnes' family. The district court sustained the motion.

Lasage also filed a motion to suppress. He sought to suppress his identification by Mose Erwin and John Ladurini. Lasage claimed the police photo array was impermissibly suggestive because only his photo matched the witnesses' prior descriptions of the suspect. The district court overruled the motion.

At trial, Erwin testified he observed a man matching Lasage's description driving a car similar to Lasage's car at the Trinity United Methodist Church on October 14, 1991. He testified he observed Rosalyn get into the car and drive away with the man.

Ladurini testified that on the evening of October 14, 1991, while he was working as a security guard at the Prairie Meadows Race Track in Altoona, he observed a man matching Lasage's description in a vehicle similar to Lasage's drive by slowly and suspiciously.

The State also produced the testimony of Margaret Edwards and Patricia Wagner indicating they observed Lasage in Anthony's Lounge in Altoona on October 7, 1991. This contradicted Lasage's statement to the police claiming he had never been to Altoona and did not even know where it was.

Additional evidence introduced by the State indicated Lasage's seminal fluid was found on Rosalyn's coat and sweatshirt. Also, several items in Lasage's car could have caused the strangulation marks left on Rosalyn's neck.

On two occasions Lasage attempted to introduce evidence relating to a human services report on the Barnes family which had been the subject of an earlier State's motion in limine. Lasage argued the report indicated the Barnes family allowed Rosalyn to roam the neighborhood and failed to keep close track of the clothes she wore. He argued the evidence was relevant to his argument that someone else was responsible for Rosalyn's death. He claimed the police found his seminal fluid on Rosalyn's clothes because she engaged in consensual oral sex with him the day before her death.

The jury found Lasage guilty as charged. The court entered judgment on the jury's verdict and sentenced him to life imprisonment.

Lasage first contends the district court erred in denying his motion to dismiss the charges on the grounds that an information was not timely filed against him as required by Iowa Rule of Criminal Procedure 27(2)(a). Our review of district court rulings is for corrections of errors at law. Iowa R.App.P. 4.

Lasage argues his arrest for a traffic violation and murder on October 16, 1991, triggered the forty-five-day speedy information period of rule 27(2)(a). He asserts, even though he was released without charges, his release was not unconditional, thereby pre-

venting the tolling of the forty-five days. We disagree.

When a person is taken into custody, he or she is arrested for purposes of rule 27(2)(a). *State v. Van Beek,* 443 N.W.2d 704, 706 (Iowa 1989). However, if it is decided that no charges will be filed, there is no obligation to take a defendant in front of a magistrate in accordance with Iowa Rule of Criminal Procedure 2. *Id.*

A release without charges is equivalent to a dismissal, provided the release is unconditional. *See id.* A dismissal tolls the speedy trial clock; likewise, an unconditional release without charges tolls the speedy information clock. Only when the charges are refiled does the clock start anew. *Id.*

Lasage was released within hours of his arrest, an arrest which was the result of miscommunication between the police and the department of criminal investigation. After this he was not subject to any of the evils rule 27(2)(a) was designed to protect against. Rather, Lasage was placed in the same position as any individual under investigation but not charged with a crime. *See id.*

Rule 27(2)(a) did not apply to Lasage's initial arrest as he was unconditionally released without charges being filed. The district court properly denied Lasage's motion to dismiss, and we affirm on this issue.

Lasage also contends the district court erred in failing to suppress his identification by two State witnesses which were the product of an impermissibly suggestive photo array. Since a constitutional issue is raised, we make an independent evaluation of the totality of the circumstances. *State v. Taft,* 506 N.W.2d 757, 762 (Iowa 1993).

In considering claims of this type, we first determine whether the identification procedure was impermissibly suggestive. *State v. Birch,* 479 N.W.2d 284, 286 (Iowa 1991) (citations omitted). If the procedure was impermissibly suggestive, we then determine whether, under the totality of the circumstances, the suggestive procedure gave rise to a "very substantial likelihood of irreparable misidentification." *State v. Holderness,* 301 N.W.2d 733, 738 (Iowa 1981).

On October 15 at 3:45 p.m. Officer Ralph Roth obtained a description of the man who Mose Erwin saw leave with Rosalyn the previous day. Mose described the man as

a white male, approximately between thirty and forty years of age. He was wearing what he considered a type of work-type clothing, either janitorial or like a mechanic would wear, type of suit, dark in color; said the individual had either blond or light brown hair down to the collar-length. His face was kind of ruddy or flush in the cheek area. He was wearing very noticeable dark-framed glasses. He described his weight as being skinny.

Later that day when Mose was shown a photographic array of six photos showing men all with roughly the same physical build and glasses, he immediately picked out Lasage's photo and handed it to Officer James Rowley. This took place slightly more than twenty-four hours after Mose saw Lasage drive off with Rosalyn.

Reliability is the linchpin in determining the admissibility of identification testimony. *State v. Thornton,* 506 N.W.2d 777, 779 (Iowa 1993) (citation omitted). The factors to be used in assessing reliability are:

(1) the opportunity of the witness to view the criminal at the time of the crime;

(2) the witness's degree of attention;

(3) the accuracy of his prior description of the criminal;

(4) the level of certainty demonstrated by the witness at the confrontation; and

(5) the length of time between the crime and the confrontation.

*Id.* (citation omitted); *State v. Mark,* 286 N.W.2d 396, 405 (Iowa 1979).

We reject Lasage's claim that the photo array was impermissibly suggestive. While the photos ranged in the amount of torso included in the picture, the torso was not an identifying feature as described by Mose. The photos were reasonably similar to Lasage and provided a close array of subjects.

While Lasage contends Erwin's identification of him is unreliable because he de-

scribed the man as "skinny," our application of the reliability factors leads us to conclude otherwise. Mose Erwin had the opportunity to view Lasage as Lasage spoke with Rosalyn. Mose paid close attention to Lasage because he was concerned about Rosalyn leaving with Lasage. Mose viewed Lasage at a very close distance, in the light. Finally, he was quite certain about his identification of Lasage from the photo array.

▮ John Ladurini also had the opportunity to view Lasage as he drove past Ladurini outside Prairie Meadows Race Track in Altoona. He provided a description of the man he saw to Altoona police, but he was unable identify Lasage from a Xerox copy of the same photo array shown to Mose Erwin. Ladurini did identify Lasage in court as the man he saw on October 14, 1991. While the period between the time Ladurini saw Lasage on Adventureland Drive and the time he identified Lasage in court was over one year, it was not so long as to negate the reliability of Ladurini's identification. This is a matter of credibility, not admissibility. *See State v. Hinsey*, 200 N.W.2d 810, 814 (Iowa 1972).

Our de novo review convinces us the identification procedure used was not impermissibly suggestive and the identification of Lasage by both witnesses was reliable. The district court properly denied Lasage's motion to suppress, and we affirm on this issue.

Next, Lasage argues the district court abused its discretion when it excluded a human services report on the Barnes family which he claims supported his theory of defense.

▮ Evidence is admissible if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury, *See* Iowa R.Evid. 402, 403. The admissibility of evidence is a matter for the exercise of the district court's discretion. *State v. Wilson*, 406 N.W.2d 442, 447 (Iowa 1987) (citation omitted). We will reverse the district court's determination on admissibility only when we find a clear abuse of discretion. *State v. Roth*, 403 N.W.2d 762, 765 (Iowa 1987).

Lasage claims the report shows Rosalyn was the type of child likely to be victimized by pedophiles, therefore someone other than Lasage could have murdered her. In addition, he claims Rosalyn's home life indicates Gerald Barnes may have been involved in Rosalyn's disappearance.

▮ We find Lasage's claims to be highly speculative and devoid of substance. The human services report is of questionable relevancy and has little or no probative value. The district court did not abuse its discretion in excluding the evidence, and we affirm on this issue.

Lasage also contends the district court erred in admitting testimony by Margaret Edwards and Patricia Wagner. He argues their testimony was highly prejudicial and was offered only to impeach Lasage's statements to the police on a collateral matter. We disagree.

▮ Impeachment evidence is inadmissible if it goes only to a collateral issue. *State v. Turecek*, 456 N.W.2d 219, 224 (Iowa 1990). However, if the evidence goes to some purpose independent of the contradiction, it is admissible. *Id.*

Both Edwards and Wagner testified they saw Lasage in Anthony's Lounge in Altoona on October 7, 1991. Lasage made a statement to DCI Special Agent John Quinn on November 1, 1991, claiming he had never been to Altoona and did not know where it was. An intentional untruth can be an indication of consciousness of guilt. *State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982).

▮ Edwards' and Wagner's testimonies were relevant to show Lasage deliberately fabricated facts to mislead investigators, showing his consciousness of guilt. The district court is affirmed on this issue.

Finally, Lasage contends his due process rights were violated by submission of a marshaling instruction on felony murder which used sexual abuse of a child under age twelve as the underlying offense. He argues it violates due process to make any inference of malice from a sex act with a minor. We disagree.

Our review of jury instructions is for errors of law. *State v. Bennett*, 503 N.W.2d 42, 45 (Iowa App.1993). However, when a defendant is alleging error involving a constitutional right, we make an independent evaluation of the totality of the relevant circumstances to determine if such error was made. *Id.* (citations omitted).

Murder is committed when a person kills another with malice aforethought. Iowa Code § 707.1 (1991). Malice may be inferred from the commission of a forcible felony which results in death. *Id.* at 46 (citations omitted). Sexual abuse of a child under the age of twelve is a forcible felony as defined by Iowa Code section 702.11 (1991).

A murder becomes first-degree murder when it is committed while participating in a forcible felony. Iowa Code § 707.2(2) (1991). The inclusion of sexual abuse of a child under the age of twelve in sections 702.11 and 707.2(2) indicated a legislative intent that sexual abuse of a child under the age of twelve may serve as a basis for a felony murder. *Cf. State v. Rhomberg*, 516 N.W.2d 803, 805 (Iowa 1994).

The instruction given by the court mirrored Iowa Criminal Jury Instruction 700.9. Since sexual abuse of a child under the age of twelve is a forcible felony, a jury can be instructed that malice may be inferred from the commission of this felony. Reading the jury instructions as a whole, it is clear the jury was properly instructed as to the law of felony murder. In addition, we do not find instruction 23 emphasized any particular theory of the case. Therefore, the instruction did not violate Lasage's due process rights, and the district court is affirmed on this issue.

We have carefully considered all of Lasage's claims and find them to be without merit. We affirm the judgment of the district court in its entirety.

**AFFIRMED.**